## CIRCUIT COURT OF FAIRFAX COUNTY

Mohammed Khan

v.

Saifullah Ranjha et al.

December 28, 1999

Case No. (Law) 172311

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

On December 9, 1999, this matter came before me on Defendants' Motion to Dismiss for Lack of Jurisdiction. After hearing oral argument from both sides, I took the issue under advisement.

Based on the evidence presented at the December 9 hearing, I make the following findings of fact. Defendants Mohammed Ahsan and Saifullah Ranjha are residents of Maryland and agents of Chaundry Brothers, Inc., a Maryland corporation. In January of 1997, defendants placed an advertisement for the sale of a Laurel, Maryland, gas station in the *Pakistan Post*, a newspaper defendants knew to circulate in Maryland, Virginia, and the District of Columbia. Khan, a Virginia resident, purchased a copy of the *Pakistan Post* in Virginia, saw defendants' advertisement, and telephoned the defendants regarding the sale of the gas station. Khan then traveled to Maryland to discuss the sale with the defendants at the Laurel station. After the initial meeting, Khan traveled a number of times to the Laurel station to meet with the defendants.

On February 12, 1997, Khan traveled to Laurel where the parties signed a handwritten document titled "Offer to Purchase Business." Def. Ex. 1. This document purportedly contained all terms of the sale. At that time, Khan gave

the defendants a deposit check for $10,000. Plf. Ex. 4. On February 16, 1997, Khan telephoned defendant Ranjha at his business in the District of Columbia and asked Ranjha to fax a copy of the document the parties had signed. From his District of Columbia office, Ranjha faxed two documents to Khan at his home in Reston, Virginia: first, the document that the parties signed on February 12, 1999 (Plf. Ex. 2), and a second, typed document, also titled "Offer to Purchase," which included a page titled "Amendment/Addendum." Plf. Ex. 1. Ranjha had signed the second document, and a space was provided for Khan's signature. Khan received both documents on February 16, 1999, signed the second document at his home in Virginia, and faxed it back to Ranjha the same day. Khan's son, Amer Kayani, signed and witnessed the second document.

After the exchange of documents, the parties continued to negotiate the sale of the gas station. Khan visited the Laurel station several times and often called the defendants in Maryland. Defendants occasionally telephoned Khan in Virginia. During one call, initiated by defendant Ahsan, defendants asked for additional funds toward a deposit. On March 3, 1997, plaintiff traveled to the Laurel station and delivered a check for $20,000. Plf. Ex. 3.

On June 10, 1998, Khan filed a motion for judgment against the defendants seeking damages arising out of the defendants' alleged failure to sell him the gas station pursuant to the February 12, 1997, agreement. Defendants were served through the Secretary of the Commonwealth pursuant to § 8.01-329(B)(1) of the Virginia Code. Service became effective as to defendant Ahsan and Chaundry Brothers, Inc., on July 7, 1998, and as to defendant Ranjha on July 8, 1998. See Va. Code § 8.01-329(C). Defendants failed to respond to the motion for judgment within twenty-one days of service. Consequently, default was entered against defendant Ahsan on November 13, 1998, and against defendant Ranjha on February 12, 1999. On November 10, 1999, defendants entered a special appearance and filed a motion to dismiss the matter for lack of subject matter jurisdiction, personal jurisdiction, improper service, and improper venue.

*Subject Matter Jurisdiction*

The party claiming that a judgment is void for lack of subject matter jurisdiction has the burden of proving the absence of jurisdiction. See *Winston v. Commonwealth*, 26 Va. App. 746, 497 S.E.2d 141 (1998), citing *Shelton v. Sydnor*, 126 Va. 625, 633-34, 102 S.E. 83 (1920). Neither the brief accompanying defendants' Motion to Dismiss nor defendants' oral argument puts forth evidence that this court lacks jurisdiction to hear contract disputes

532

at law. Absent any evidence to the contrary, I find that this court has subject matter jurisdiction over this matter.

## Personal Jurisdiction

In determining whether it has personal jurisdiction over a non-resident, a court must consider both statutory and Constitutional requirements. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). Virginia's "long arm" statute gives Virginia courts personal jurisdiction over a "a person,[1] who acts directly or by an agent, as to a cause of action arising from the person's . . . transacting business in this Commonwealth." Va. Code § 8.01-328.1(A)(1).

There is no question that defendants' conduct met the requirements of the "long arm" statute. Defendants transacted business in the Commonwealth by advertising in a newspaper they knew would be read by Virginia residents, calling Khan over the telephone while he was in Virginia in order to negotiate the sale of the gas station, and faxing Khan a document which altered the parties' original agreement to Khan's residence in Virginia. However, in order to exercise personal jurisdiction over the defendants, this court must also find that the relationship between the defendants and the forum state was not the result of the unilateral actions of the plaintiff. See *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958). The defendants must have had "certain minimum contacts with [Virginia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).

The minimum contacts requirement serves two purposes. First, it protects defendants from the burden of litigating in an inconvenient or distant forum. Second, it ensures that states do not reach beyond their limited status as co-equal sovereigns in the federal system. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980); see also *Peninsula Cruise v. New River Yacht Sales*, 257 Va. 315, 319, 512 S.E.2d 560 (1999). Courts have long noted that advances in technology have resulted in occasional alterations in the definition of "minimum contacts."

A trend is clearly discernable toward expanding the permissible scope of state jurisdiction over foreign corporations and other non-

---

[1] A corporation is a "person" for purposes of determining personal jurisdiction. Va. Code § 8.01-328.

residents. . . . Modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

*McGee v. International Life Ins. Co.*, 355 U.S. 220, 222-23, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957); see also *Hanson* at 250.

Despite the ease with which parties from different states can now contract and the less rigid definition of "minimum contacts," the threshold question in a determination of personal jurisdiction remains whether the defendant *purposefully* established contacts with the forum state. See Peninsula Cruise at 320. If a defendant intentionally contacts residents of the forum state for the purpose of conducting business, the defendant knowingly invokes the benefits and protections of the forum state, and therefore must answer for its actions in the courts of that state. See *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).

A single transaction by a non-resident defendant in Virginia is sufficient to confer jurisdiction on Virginia courts. See *Kolbe, Inc. v. Chromodern, Inc.*, 211 Va. 736, 740, 180 S.E.2d 664 (1971). In *Kolbe*, the defendant, a California corporation, entered into a contract for the sale of chairs to a military base in North Carolina. The California corporation authorized one of its agents to represent the corporation in Virginia for that transaction only. While in Virginia, the agent drafted a purchase order for the goods, without which the contract would not have been enforceable. The court held that, although the contract was drafted in California and the goods were shipped to North Carolina, the drafting of the purchase order by the corporation's agent in Virginia was a purposeful act, sufficient to confer personal jurisdiction on the Virginia court.

Defendants argue that their contacts with Virginia do not rise to the level of a single transaction. They assert that they have never had an agent in Virginia and have never transacted business in Virginia. They further argue that the original document the parties signed on February 12, 1997, at the Laurel Citgo is the operative contract between the parties, and that all contract negotiations occurred in Maryland. In addition, defendants argue that, even if their actions did constitute a single transaction under § 8.01-328.1(A)(1), exercise of jurisdiction by this court would offend traditional notions of fair play and substantial justice. Defendants rely on two cases: *Ajax Realty Corp. v. Zook*, 493 F.2d 818 (4th Cir. 1972), and *Viers v. Mounts*, 466 F. Supp. 187 (W.D. Va. 1979). Because determinations of personal jurisdiction are fact-specific, it is necessary to examine the facts of these cases and how they compare to the case at bar.

In *Ajax*, a Washington manufacturer sold window frames to a buyer in Colorado, who then sold the frames to Ajax, a Virginia corporation. At the request of the Colorado buyer, the manufacturer shipped the frames directly to Ajax in Virginia. Claiming that the windows were defective, Ajax filed suit against the manufacturer, relying on the "single transaction" rule established in Kolbe. The court declined to find that the single act of shipping goods to Virginia was sufficient to confer personal jurisdiction on Virginia courts. The court found that the manufacturer shipped the goods solely to accommodate its buyer, not to obtain any business benefit for itself.[2] *Ajax* at 821.

In *Viers*, the plaintiff (a Virginia corporation) negotiated with the defendants (residents of Kentucky) for construction of a house in Kentucky. The defendants initiated the negotiations by calling plaintiff in Virginia, and at various times the parties met in Kentucky and in Virginia to discuss the project. The parties ultimately executed a written contract in Kentucky. Plaintiffs sued defendants for breach of contract in Virginia. The district court found that personal jurisdiction did not exist in Virginia under § 8.01-328(A)(1). "Mere contract negotiations carried out in Virginia between a state citizen and a nonresident, with execution and performance of the contract in a foreign forum" are not sufficient to confer personal jurisdiction on Virginia courts because in such a situation the nonresident has not "purposefully availed himself of the privilege of conducting activities within Virginia, thus invoking the benefits and protections of its laws." *Viers* at 191, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958).

The case at bar differs significantly from both *Ajax* and *Viers*. First, unlike the situation in *Ajax*, defendants' contacts with Virginia were self-serving. Defendants intentionally placed an advertisement in a newspaper they knew to circulate in Virginia, called the plaintiff in Virginia for the purpose of negotiating the sale of their business, and faxed the plaintiff a document that changed the terms of their original agreement. Second, unlike the situation in *Viers*, one of the agreements between the parties was executed in Virginia.

I find that this court has personal jurisdiction over defendants Ahsan and Ranjha under § 8.01-328.1(A)(1) of the Virginia Code. Defendants' conduct indicates that they knowingly and purposefully engaged in business activity in Virginia. The due process requirements of "fair play and substantial justice'

---

[2] The court further reasoned that, if the manufacturer had shipped the goods to the buyer in Colorado, Virginia would clearly not have personal jurisdiction. The court stated that it did not want to establish a rule that a manufacturer "transacts business" under the Long Arm statute in every state in which one of its distributor's deals. *Ajax* at 820.

would not be offended if they were required to answer for their conduct in a Virginia court.

## Service of Process

Defendants further allege that they were not properly served with process. However, defendants do not include improper service as a basis for dismissal in their prayer for relief. Defendants' Memorandum Supporting their Motion for Dismissal asserts that defendants sold the Laurel Citgo station to another purchaser prior to the commencement of this suit. Defendants further assert that they first learned of this action when they received notice of an *ex parte* damages hearing set for December 9, 1999, which was mailed to defendant Ahsan at his "new address." Def. Memo. at 2.

Neither defendants' motion to dismiss nor the supporting memorandum set forth arguments supporting their claim of improper service of process. Further, defendants did not address this issue during oral argument. Absent evidence to the contrary, I find that process was properly served on the Secretary of the Commonwealth under § 8.01-329 of the Virginia Code. Pursuant to § 8.01-329(C), service became effective as to defendants Ahsan and Chaundry Brothers, Inc., on July 7, 1998, and as to defendant Ranjha on July 8, 1998.

## Venue

Defendants also object to venue. However, defendants do not include venue as a basis for dismissal or transfer in their prayer for relief. Furthermore, the venue objection is not mentioned in the Memorandum Supporting the Motion to Dismiss and was not addressed during oral argument.

Plaintiff is a resident of Fairfax County and all named defendants are nonresidents. Therefore permissible venue lies with this court under § 8.01-262(10) of the Virginia Code.

For these reasons, the defendants Motion to Dismiss for Lack of Jurisdiction is denied.